# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **HUNTER FAN COMPANY,** | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:17-cv-2758 |
| | ) |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| **JIMCO LAMP & MANUFACTURING** | ) |
| **COMPANY d/b/a J. HUNT &** | ) |
| **COMPANY and d/b/a J. HUNT HOME,** | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Hunter Fan Company, for its Complaint against Defendant Jimco Lamp & Manufacturing Company d/b/a J. Hunt & Company and d/b/a J. Hunt Home, states as follows:

## I. THE PARTIES

1. Plaintiff Hunter Fan Company ("Hunter") is a corporation organized and existing under the laws of the State of Delaware having its principal place of business located at 7130 Goodlett Farms Parkway, Suite 400, Memphis, TN 38016.

2. Upon information and belief, Defendant Jimco Lamp & Manufacturing Company ("Jimco") is a corporation organized and existing under the laws of the State of Ohio and having its principal place of business located at 11759 U.S. 63, Bono, Arkansas 72416. Upon information and belief, Jimco's divisions known as J. Hunt Home and J. Hunt & Company have their principal place of business located at 5779 Getwell Road #A, Southhaven, Mississippi 38672. Jimco can be served via the secretary of state, pursuant to Tenn. Code Ann. § 20-2-215(a).

## II.     JURISDICTION AND VENUE

3. This is an action against Jimco for trademark infringement and dilution arising under the Lanham Act.

4. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121, as it involves federal trademark law under the Lanham Act; under 28 U.S.C. § 1338(a), as it is a civil action arising under an Act of Congress relating to trademarks; under 28 U.S.C. § 1331 as it involves a federal question; and under 28 U.S.C. § 1332 as the action is between citizens of a State and citizens or subjects of a foreign state, and the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000.00.

5. This Court has personal jurisdiction over Jimco based upon Jimco's offering to sell and/or selling its goods in the State of Tennessee, based upon Jimco's transaction of business in the State of Tennessee, and Jimco's sufficient minimum contacts with the State of Tennessee.  Upon information and belief, Jimco has sold and currently sells table fans under the J. HUNT Marks at the following stores in the State of Tennessee: Home Goods, TJ Maxx, and Marshall's.[1]

6. Venue is proper in this District under 28 U.S.C. § 1391.

## III.     THE CONTROVERSY

### A.  HUNTER'S TRADEMARKS

7. Since 1886, Hunter and/or its predecessors-in-interest and through its licensees have been and continue to be engaged in the business of having ventilating and circulating fan products produced and sold throughout the United States.

---

[1] Jimco's failure to register to do business in the State of Tennessee should not be construed as evidence that Jimco does not do business in the State of Tennessee, given that Jimco is also not registered to do business in Mississippi, where the principal place of business for J. Hunt Home and J. Hunt & Company is located.

2

8. For over 50 years, Hunter has been using the trademark HUNTER, alone and in combination with certain designs, to advertise and sell various types of fans, along with other products, and is the owner of state and federal common law and statutory trademark rights for its word mark HUNTER for fans, among other products.

9. In addition, on March 16, 1965, Hunter obtained from the United States Patent and Trademark Office ("USPTO") a federal trademark registration for its HUNTER trademark, U.S. Registration No. 786,814, for use on "ventilating fans." Attached as **Exhibit A** is a true and correct copy of U.S. Registration No. 786,814.

10. Since that time, Hunter has used its HUNTER trademarks in connection with multiple home comfort products and has obtained numerous U.S. trademark registrations for the HUNTER trademark, alone and in combination with certain designs, for numerous types of fans, lighting products, and various home comfort products. Some of the relevant U.S. trademark registrations are listed in the table below:

| Registration No. | Trademark | Goods | Date of First Use and Date of First Use in Commerce |
|---|---|---|---|
| 1,388,231 | *Hunter* (stylized logo) | electric circulating fans for domestic and commercial | First use - July, 1981; First use in commerce - February, 1982 |
| 1,507,014 | HUNTER | electric lighting fixtures, namely ceiling fixtures, chandeliers, wall lanterns | First use - September 24, 1987; First use in commerce - September 24, 1987 |
| 1,381,169 | HUNTER | thermostats | First use - July, 1983; First use in commerce - January, 1984 |

| 1,403,033 | HUNTER | electric circulating fans for commercial and residential use | First use - September 1, 1962; First use in commerce - September 1, 1962 |
|---|---|---|---|
| 2,038,067 | HUNTER | air treatment units for usage in commercial and residential installations for regulating ambient air quality by removing odors, chemicals and particulates | First use - September 30, 1992; First use in commerce - September 30, 1992 |
| 2,115,496 | HUNTER | electronic retailing services via computer featuring ceiling fans, thermostats and air purifiers | First use - April 15, 1996; First use in commerce - April 15, 1996 |
| 3,690,468 | *Hunter* SINCE 1886 | thermostats; bathroom exhaust fans; ceiling fans; humidifiers; portable electric fans; ventilating exhaust fans | First use - August, 2008; First use in commerce - August, 2008 |
| 3,321,108 | HUNTER'S VERY BEST SINCE 1886 | ceiling fans | First use - April 27, 2006; First use in commerce - April 27, 2006 |
| 3,057,885 | HUNTER | bath exhaust fans | First use - January, 2005; First use in commerce - January, 2005 |
| 3,066,072 | HUNTER | wireless remote controls and hard wired wall mount controls for ceiling fans and light fixtures | First use - 1999; First use in commerce - 1999 |
| 3,169,960 | HUNTER | humidifiers | First use - October 22, 1998; First use in |

4

|  |  |  | commerce - October 22, 1998 |
|---|---|---|---|
| 4,735,061 | HUNTER | air purifier replacement filters | First use - December, 2004; First use in commerce - December, 2004 |

11. The HUNTER trademark registrations set forth in the above table are attached hereto as collective **Exhibit B**.[2]

12. Hunter's trademarks are hereinafter collectively referred to as the "HUNTER Trademarks."

13. Hunter has been using the HUNTER Trademarks in a prominent and distinctive manner in interstate commerce so as to distinguish the source of its products from those of others, and has spent significant effort and sums of money in advertising and otherwise promoting the sale of its goods under the HUNTER Trademarks in the State of Tennessee, around the United States, and internationally. Hunter has sold countless fans under the HUNTER Trademarks and has spent millions in advertising related to the HUNTER Trademarks.

14. As a result of Hunter's long and exclusive use of its HUNTER Trademarks, the large number of sales under the HUNTER Trademarks, and the large amount of money spent or foregone for advertising and promotion of the goods sold under the HUNTER Trademarks, the HUNTER Trademarks have become, through widespread and favorable public acceptance and recognition, exclusive assets of substantial value as symbols of Hunter, its quality of goods, and its good will.

---

[2] Hunter has obtained numerous international trademark registrations for HUNTER as well for the same or similar goods.

5

15. Many of Hunter's HUNTER Trademarks have obtained incontestable status pursuant to 15 U.S.C. § 1065.

16. Due to Hunter's use and promotion, the trade and purchasing public has come to know and recognize Hunter's HUNTER Trademarks as a designation identifying Hunter as the source of fans. Accordingly, Hunter's HUNTER Trademarks have developed and represent valuable goodwill which rightfully belongs exclusively to Hunter.

17. Further, in light of the inherent and acquired distinctiveness of the HUNTER Trademarks, the duration and use of the mark throughout Tennessee and the United States, the extent of the advertising of the HUNTER Trademarks throughout Tennessee and the United States, and the high degree of the HUNTER Trademarks recognition in Tennessee and the United States in regard to fans and fan-related products provided by Hunter, the HUNTER Trademarks are famous in Tennessee as well as throughout the United States.

## B. JIMCO'S INFRINGING ACTIVITIES

18. Hunter and Jimco are competitors in the fan product market in the United States, as Jimco also sells fans in the United States.

19. Long after Hunter first started using the HUNTER Trademarks for fans, Jimco began using the name J. HUNT, J. HUNT HOME, J. HUNT & COMPANY, and other variants, hereinafter collectively referred to as the "J. HUNT Marks," in connection with the sale of a line of table fans.

20. The J. HUNT Marks are confusingly similar to Hunter's well-known word mark HUNTER in sound and appearance. *See* Ex. B, U.S. Registrations Nos. 786,814; 1,507,014; and 1,403,033. Indeed, both marks contain the same root "HUNT." Thus, Jimco has only added the letter J. before "HUNT" and, in the case of its J. HUNT HOME and J. HUNT & COMPANY

marks, either "& COMPANY" or "HOME SIGNATURE" after "HUNT" all of which do nothing to further distinguish Jimco's products from Hunter's.  This confusion is exacerbated by the fact that Hunter's founder was named John Hunter and his name has become an integral part of Hunter's advertising.  Attached hereto as **Exhibit C** is a true and correct screenshot of Hunter's "Meet John Hunter" webpage.

21. The J. HUNT Marks are being used in connection with fans that travel in and are promoted through the same channels of trade for sale to, and use by, the same class of purchasers for Hunter's advertised and sold under Hunter's HUNTER Trademarks.  Attached hereto as **Exhibit D** is a true and correct depiction of Jimco's J. HUNT fan purchased at a TJ Maxx store located in the Western District of Tennessee.

22. Jimco's use of the J. HUNT Marks, and variants thereof, is likely to cause consumer confusion as to the source of the J. HUNT fans or to cause consumers to be mistaken or deceived as to the origin, affiliation, connection, or association of Jimco with Hunter, or as to Hunter's sponsorship or approval of Jimco's J. HUNT goods and commercial activity.

23. Jimco knew or should have known of Hunter's prior use of its HUNTER Trademarks in the fan industry before it entered the fan products market.

24. Jimco's use of the J. HUNT Marks, and variants thereof, will inevitably cause dilution by blurring or dilution by tarnishment of the reputation, goodwill, and business value of Hunter Fan's interests in its famous HUNTER Trademarks for fans and fan-related products.

### IV.     CAUSES OF ACTION

#### COUNT I
#### INFRINGEMENT OF A FEDERALLY-REGISTERED TRADEMARK

25. Hunter incorporates and realleges the foregoing paragraphs as if fully set forth herein.

26. Jimco has infringed Hunter's federally-registered HUNTER Trademarks in interstate commerce by various acts, including, without limitation, offering for sale fans under the J. HUNT Marks, which are confusingly similar to Hunter's federally-registered HUNTER Trademarks.

27. Jimco's uses of the J. HUNT Marks for its fan products is without Hunter's permission or authority and is likely to cause confusion, to cause mistake and/or to deceive the purchasing public and also constitutes initial interest confusion.

28. Jimco's uses of the J. HUNT Marks has been made notwithstanding Hunter's well-known and prior established rights in the HUNTER Trademarks with constructive notice of Hunter's federal registration rights under 15 U.S.C. § 1072.

29. Jimco's conduct constitutes infringement of the federally-registered HUNTER Trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

30. Jimco's infringing activities have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to Hunter's business, reputation, and good will in the federally-registered HUNTER Trademarks, for which Hunter has no adequate remedy at law.

## COUNT II
## TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c)

31. Hunter incorporates and realleges the foregoing paragraphs as if fully set forth herein.

32. Hunter and its HUNTER Trademarks have been famous for a significant amount of time in relation to fans and fan-related goods.

33. Jimco's use of the J. HUNT Marks, or variants thereof similar to or likely to cause confusion with the HUNTER Trademarks have been used in commerce in association with fans for Jimco's commercial gain.

34. Jimco has engaged in dilution by blurring because Jimco's use of the J. HUNT Marks, or variants thereof similar to or likely to cause confusion with the HUNTER Trademarks, has already caused or is likely to cause an association arising from the similarity between Jimco's J. HUNT Marks and the HUNTER Trademarks that impairs the actual or acquired distinctiveness of Hunter's HUNTER Trademarks.

35. Jimco has engaged in dilution by tarnishment because Jimco's use of the J. HUNT Marks, or variants thereof similar to or likely to cause confusion with the HUNTER Trademarks, has already caused or is likely to cause an association arising from the similarity between Jimco's infringing use of the J. HUNT Marks and literally false and/or deceptively misleading representations and Hunter's HUNTER Trademarks that harms the reputation and goodwill associated with Hunter's HUNTER Trademarks.

36. Jimco's acts have already caused or are likely to cause an association arising from the similarity between the J. HUNT Marks and Hunter's HUNTER Trademarks that lessens the capacity of Hunter's HUNTER Trademarks to identify and distinguish its goods and services.

37. Jimco willfully intended to trade on the recognition of Hunter and its famous HUNTER Trademarks for fans and fan-related goods.

38. Jimco's acts are in violation of Section 43(c) of the Lanham Act, as amended, 15 U.S.C. § 1125(c).

39. Jimco's infringing activities have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to Hunter's business, reputation, and good

will in the federally-registered HUNTER Trademarks, for which Hunter has no adequate remedy at law.

## V.     PRAYER FOR RELIEF

WHEREFORE, Hunter requests a judgment as follows:

1. That Jimco, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with Jimco, be preliminary and permanently enjoined and restrained:

   a. from using the J. HUNT Marks, or any other designations or trademarks likely to cause confusion with Hunter's HUNTER Trademarks for fans;

   b. from otherwise infringing upon Hunter's rights in and to the HUNTER Trademarks and from otherwise unfairly competing with Hunter in any manner whatsoever; and

   c. from selling fans or related products or services under the J. HUNT Marks or any other designation likely to cause confusion with the HUNTER Trademarks.

2. That, pursuant to 15 U.S.C. § 1118, Jimco, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with Jimco, be ordered to deliver up for destruction its fans and fan-related products bearing the J. HUNT Marks, or any designation or mark likely to cause confusion with the HUNTER Trademarks.

3. That Jimco be directed to file with the Court and serve on Hunter, no later than thirty (30) days after the issuance of an injunction, a report in writing under oath setting forth in detail the manner and form in which Jimco has complied with the injunction.

4. That the Court adjudge and decree that Jimco's infringing use of the HUNTER Trademarks is in violation of 15 U.S.C. § 1114.

5. That the Court adjudge and decree that any use by Jimco of the J. HUNT Marks in conjunction with Jimco's fans or any other related products or services, will inevitably cause dilution by blurring or dilution by tarnishment of the reputation, goodwill, and business value of Hunter's interests in its famous HUNTER Trademarks for fans and fan-related products.

6. That the Court adjudge and decree that a likelihood of confusion exists between the HUNTER Trademarks and Jimco's infringing J. HUNT Marks.

7. That the Court require a full and complete accounting of all monies received by Jimco as a result of the wrongful conduct, together with an order transferring to Hunter any amounts found to be due to Jimco.

8. That Hunter be awarded Jimco's profits or Hunter's damages from lost sales after an accounting, and that such award be increased as permitted, including being trebled as provided under 15 U.S.C. § 1117.

9. That Hunter has and recover its costs and attorneys' fees from Jimco, including as provided by 15 U.S.C. § 1117.

10. That the Court award pre- and post-judgment interest on all monies found to be due to Hunter from Jimco, at the then prevailing or legal rate, whichever is greater, from the date said amounts or any part thereof became or become due.

11. That the Court require Jimco to notify its customers, clients, and associates of said Court Order.

12. That Hunter be awarded such other and further relief as this Court may deem just and proper.

### VI.    JURY DEMAND

Hunter hereby demands a trial by jury for all issues so triable.

Dated: October 13, 2017

Respectfully submitted,

s/ Adam S. Baldridge
Adam S. Baldridge (TN Bar #23488)
Nicole D. Berkowitz (TN Bar #35046)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone: 901.577.2102
Facsimile: 901.577.0838
abaldridge@bakerdonelson.com
nberkowitz@bakerdonelson.com

*Attorneys for Plaintiff Hunter Fan Company*